## Isaac T. Sheldon & another, Administrators, *vs.* Harvey Kirkland.

An inhabitant of this commonwealth died, leaving a widow and infant son, real and personal property in Massachusetts, and personal property in Wisconsin. Administration was taken out in each state, and the administrator in Wisconsin duly collected the property there, and, after the death of the widow, and on the supposition that no part of it would be needed in the settlement of the estate of either parent, invested it in Wisconsin, in the name of the son, and transferred it, pursuant to a judicial decree in Wisconsin, to the son's guardian in this commonwealth. The estates of both parents proving insolvent, it was *held*, that the administrator in this commonwealth might maintain a bill in equity here, (making the administrator of the widow's estate a party,) against the guardian of the son to compel the application of the property so received by him to the payment of the debts of the father, and of the distributive share of the widow.

Thomas, J. This is a suit in equity, submitted to us upon the bill and answer and an agreed statement of facts. The material facts are these :

The plaintiffs, Isaac T. Sheldon and Richard T. Morton, are the administrators of the goods and estate of Theodore Sheldon, late of Northampton, deceased. Theodore Sheldon died at Northampton in March 1852. He left a widow, Mary T. Sheldon, and two children, Isaac T. Sheldon, then six years old, and Dorcas Sheldon, then two years of age, both children by his said wife. The daughter, Dorcas, died on or about the 15th of December 1854, and no administration has been taken on her

estate. The widow died after Dorcas, and on or about the 21st of December 1854. On the 3d of April 1855, the defendant, Kirkland, was appointed special administrator of her estate, and continued in the execution of that office till the 3d of June 1856, when full administration was granted to James L. Hartwell. The defendant was appointed, by the probate court in Hampshire county, guardian of Isaac T. Sheldon, Isaac then having his domicil in this county.

Theodore Sheldon died seised of real estate in this commonwealth of about ten thousand dollars in value, and of personal property of the value of about fifty six thousand dollars. Of this personal property about twenty thousand dollars consisted of notes secured by mortgages of real estate in the county of Kenosha in the State of Wisconsin. The notes were due from residents in that state, and were in the hands of an agent of said Theodore at the time of his decease, and were not inventoried and did not come into the hands of the plaintiffs to be administered by them. Richard T. Morton, one of the plaintiffs, went to Wisconsin, and was there appointed administrator of the estate of said Theodore by the county judge of Kenosha county, having jurisdiction therefor. As such administrator he proceeded to collect said notes and to foreclose the mortgages, by selling the mortgaged estate according to the laws of Wisconsin. For them he got other notes and mortgages to the amount of about seventeen thousand dollars. These notes and mortgages he took in the name of, and made payable to, Isaac T. Sheldon; it then being supposed that no portion of them would be needed in the settlement of the estate of said Theodore Sheldon, of the assets of which they were a part, or in the settlement of the estate of said Mary T., which would be entitled to a distributive share of one third of such assets upon the settlement of the estate of Theodore and after the payment of his debts.

The settlement of the estate of Theodore Sheldon, in Wisconsin, being delayed by the question whether the domicil of Mary T., at the time of her death, and the domicil of Isaac T. Sheldon, were in Wisconsin or Massachusetts, Richard T. Morton, the administrator in Wisconsin, deposited the notes and mort-

gages he had received in the settlement of the debts due the estate of Theodore in the hands of the county judge of Kenosha; the said judge accepting them "in account as money upon his final settlement with the court as administrator." It was afterwards determined that the domicil of Mary T. and Isaac was in Massachusetts.

While these securities were in the hands of the judge, the legislature of Wisconsin, on the 31st of March 1856, passed the following statute, to take effect on the same day:

"SECTION 1.  In all cases where any guardian and his ward may both be nonresidents of this state, and such ward may be entitled to personal property of any description in this state, such guardian, on producing satisfactory proof to the county court of the proper county, by certificates according to the act of congress in such cases, that he has been duly appointed, and has as guardian given bond and security, in the state in which he and his ward reside, in double the amount of the value of the property, and it is found that a removal of the property will not conflict with the terms of limitation attending the right or title by which the ward owns or holds the same, then any guardian may demand or sue for, and remove any such property to the place of residence of himself and ward.

"SECTION 2.  When such nonresident guardian shall present an exemplified copy, under the seal of the proper court in the state of his residence, of all the entries on record in relation to his appointment, giving bond, &c., and authenticated as required by the act of congress aforesaid, the county court of the proper county in this state may make suitable orders, discharging any resident guardian, executor or administrator, and authorizing the delivery and passing over of such property to such nonresident guardian, and also requiring receipts to be passed and filed, if deemed advisable: provided, that in all cases thirty days' notice shall be given to the resident guardian, executor or administrator, of the intended application for the order of removal; and the court may reject the application and refuse such order whenever it is satisfied it is for the interest of the ward that such removal shall not take place."

45 *

On the 14th of November 1856, the county judge of Kenosha, on the application of the defendant, made an order authorizing the passing over of the notes and mortgages to the defendant, as the nonresident guardian of Isaac T. Notice of this application was given by personal service on Richard T. Morton in Massachusetts. No notice was given to the administrator of the estate of Mary T., the widow.

Subsequently, in May 1857, Richard T. Morton settled an account in the probate court, (that is, the Kenosha county court,) and a balance of fifty five hundred dollars being found in his hands, he was ordered to pay the same to the administrators of the estate of Theodore Sheldon in Massachusetts. As one of the administrators of the estate in this commonwealth, he filed his receipt for that sum, and was discharged for that amount as administrator in Wisconsin. There is still a balance of about six hundred dollars in the hands of the administrator in Wisconsin.

The estate of the widow, Mary T., without including her right as distributee of her husband's estate, is insufficient to pay funeral expenses and charges of administration. It has been declared insolvent, and claims proved, exceeding two thousand dollars, due to citizens of Massachusetts.

The personal assets in the hands of the administrators of Theodore Sheldon are insufficient to pay the debts due from the estate; and if they cannot receive these funds, they will have to sell real estate for that purpose, and there will of course be no personal estate for distribution.

Upon these facts, it is plain that these notes and mortgages are part of the assets of the estate of Theodore Sheldon for the payment of his debts and expenses of administration; and that the domicil of said Theodore, his widow and Isaac T. being in this commonwealth, the personal property, after the payment of the debts and charges of administration, is to be distributed under the laws of this commonwealth.

It is also plain that these notes and mortgages were taken originally in the name of Isaac T. Sheldon, and were passed over to his guardian, under a misapprehension of the facts and

by mistake and inadvertence of the parties; and that he cannot, in equity and good conscience, hold them as against these plaintiffs, administrators of Theodore, and representing the interests of the creditors and of the persons entitled under the statute of distribution.

Without inquiring as to the validity of the decrees in Wisconsin, and supposing the legal title to be in the defendant; yet the property he received was trust property for the payment of the debts of the deceased, and for distribution among his heirs; and the defendant took without consideration and with notice of the trust. The beneficial interest in the property was not changed, and he must hold for those who have the equitable interest.

The muniments of the property, the evidences of the debts due, being in the hands of the defendant, a citizen of this state and within the jurisdiction of this court, and the jurisdiction of the courts of Wisconsin as to them having been exhausted, the defendant should be required to transfer to the plaintiffs the entire amount as assets for them to administer. Or, the property having been received by the defendant from the administrator in Wisconsin, and under the order of the court, upon the ground and with the understanding that it would not be necessary for the payment of the debts of Theodore Sheldon, or for the payment of the distributive share to the widow or her legal representatives, and thus being paid and retained in ignorance of the facts and under misapprehension and mistake; to the extent that such funds are necessary to pay the debts of Theodore Sheldon and the debts of the widow, the defendant should be required to pay over to the respective administrators whatever sums may be necessary for that purpose.

Or the case may be put on this ground; that the securities being taken in the name of the defendant's ward, but the consideration moving from the plaintiffs as they were administrators of Theodore Sheldon, an implied trust results in favor of the plaintiffs.

In either view, it would seem that Hartwell, the administrator of Mary T. Sheldon's estate, should have been, and should

now be, made a party to the bill, that her estate may be bound by the decree.

The order will be — Hartwell having been made a party to the suit — for the defendant to pay over the funds in his hands to the plaintiffs, to be by them administered as the assets of the estate of Theodore Sheldon. *Order accordingly.*

*W. Allen, Jr.* for the plaintiffs.

*C. Delano,* for the defendant.